IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2008

## BRYAN LEE CABLE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Blount County**
**No. C-16729    Michael H. Meares, Judge**

---

**No. E2007-02668-CCA-R3-PC - Filed February 12, 2009**

---

The petitioner, Bryan Lee Cable, appeals the denial of his petition for post-conviction relief. In this appeal he asserts that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Robert L. Huddleston, Knoxville, Tennessee, for the appellant, Bryan Lee Cable.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Mike Flynn, District Attorney General; and Rocky H. Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Blount County Circuit Court jury convicted the petitioner, Bryan Lee Cable, of two counts of aggravated burglary, a Class C felony; two counts of theft of $10,000 or more, a Class C felony; two counts of burglary, a Class D felony; and four counts of theft of $1000 or more, a Class D felony. The trial court imposed an effective sentence of 24 years' incarceration. This court affirmed the 24-year sentence on direct appeal. *See State v. Brian Lee Cable*, No. E2005-00608-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., Knoxville, May 19, 2006).[1] Our supreme court denied the petitioner's application for permission to appeal on September 25, 2006. *See State v. Bryan Lee Cable*, No. E2005-00608-SC-R11-CD (Tenn., Sept. 25, 2006). The petitioner then filed a timely petition for post-conviction relief.

---

[1]Although this court spelled the petitioner's name "Brian" in our opinion on direct appeal, the post-conviction record reflects a spelling of "Bryan." We will use the latter spelling. The petitioner did not challenge the propriety of his convictions on direct appeal.

In his petition, the petitioner claimed that his convictions were based upon evidence obtained during an unconstitutional search and seizure, that his convictions were based upon the violation of his privilege against self-incrimination, that he was denied the effective assistance of counsel, and that he had obtained newly discovered evidence that called into question the validity of his convictions. The petitioner, through his appointed counsel, filed an amended petition on September 10, 2007, alleging that his trial counsel should have pursued allegations that one of the victims had improper contact with a juror and that counsel should have filed a motion to sever the offenses. The petitioner abandoned grounds that his convictions were based upon illegally seized evidence or a violation of his privilege against self-incrimination and that newly discovered evidence affected his convictions.

At the November 9, 2007 evidentiary hearing on his petition, the petitioner testified that his trial counsel never discussed any type of trial strategy with him and claimed that the two "didn't have that much contact." The petitioner also expressed confusion regarding the court proceedings, explaining, "I don't really understand things that goes [sic] on. I don't understand what's going on as far as court and things like that. I don't understand those questions and stuff." He blamed his lack of understanding on "a learning disorder" he had "ever since [he] was a little kid." The petitioner stated that he asked trial counsel to subpoena "[a]bout seven or eight" witnesses to testify on his behalf but he could only remember "some of the names." Included among his list of desired witnesses were potential co-defendants, "the[] Reynolds boys." The defendant claimed that he and trial counsel had never discussed the filing of a motion to sever the offenses.

During cross-examination, the petitioner admitted that he had given an incriminatory statement to police prior to trial and that trial counsel successfully had portions of the videotaped statement redacted. The petitioner also conceded that one of the witnesses he wanted trial counsel to subpoena, Roger Gibson, had testified as a witness for the State. The petitioner, acknowledging that Mr. Gibson was one of the victims in the case, stated, "He testified on the State's behalf. But I was wanting him to be a witness there on other issues." The petitioner testified that he was "not sure [Mr. Gibson] could have" offered testimony on his behalf regarding some of the offenses. The petitioner insisted that testimony from the Reynolds brothers "would have helped [him] tremendously." He explained, "[T]hey w[ere] the one[s] that actually did the crime. I was just the one involved in the stolen property."

The petitioner also conceded that he had rejected a plea offer that included an eight-year sentence, another offer that included a ten-year sentence, and finally an offer that included a 12-year sentence, but he claimed that he had done so only on the advice of trial counsel. He stated that he was "confused" because trial counsel had told him the potential sentence if convicted at trial would be three to six years. The petitioner acknowledged that if the trial court granted post-conviction relief and agreed to sever the offenses at a new trial, he would be facing a longer potential sentence with a greater release eligibility date.

On redirect examination, the petitioner insisted that the Reynolds brothers, if called to testify on his behalf, would have "helped clear" him. The petitioner also claimed that his mother told counsel about improper contact between one of the jurors and one of the victims. The petitioner insisted that he rejected the plea offers because he "really just didn't understand." He explained,

[W]hat I . . . understood was if you had a right to remain silent when you're arrested and you got that right to take it to a trial, and if they find you guilty then you get your time that way. That's the way I understood it. I didn't understand you could go and get found guilty and then walk out with 24 years, as I did. I didn't understand it like that.

The petitioner stated, "I was told that all I could get was three to six years and I might as well go ahead and take it to the box. That's what my counselor told me." He insisted that counsel never warned him that he could face consecutive sentences and that counsel did not explain release eligibility. The petitioner explained, "He told me that if I took it to the box, after it was over, if I got the three to six that I should be able to go home."

Trial counsel testified that the petitioner faced "numerous charges involving thefts, receiving stolen property, and a couple of burglaries" that "involve[d] separate occurrences, though many of which involved the same participants." Trial counsel explained,

The . . . State was claiming that [the petitioner] was involved in many episodes of dealing with stolen property in various ways, either stealing it, o[r] breaking into houses or outbuildings and then just, you know, pawning or selling or disposing of the property in various ways. Many, or in fact most of which involved Jonathan and Albert Reynolds and a couple of other folks that he worked with. But, in fact, they were over a 60-day period approximately, and most of which involved different victims.

Counsel testified that he had advised the petitioner "after significant amounts of thought about the matter, that [he] thought it would be in [the petitioner's] best interest to try the matters together rather than filing a Motion for Severance." Counsel stated that he still believed the advice to be good. He explained, "I think that it's a very debatable kind of issue . . . but I thought [the petitioner's] best chance of coming out . . . with the least severe sentence . . . was to try the cases together." Counsel stated, "I think today I would probably tell him the same thing. But it was a close question."

Counsel testified that he had no recollection of any discussion involving improper contact between one of the jurors and one of the victims. Counsel stated that the petitioner wanted him to interview the "alleged . . . co-conspirators" to see "what their stories would be," but he "was unable to get any cooperation from the individuals." He testified that he decided not to issue subpoenas to these individuals because he thought they "would, in all likelihood, be hostile."

Counsel testified that the petitioner "had said something about some past learning difficulties," but counsel insisted that the petitioner "did not appear to have any real difficulty . . . answering . . . questions, explaining . . . what had happened, what he was trying to do." Counsel noted that the petitioner's recorded statement was "a hundred and some odd transcript pages to the officers, answering their questions, that appear to be direct and to the point and detailed." Counsel

insisted that he "had no reason to believe that [the petitioner] didn't understand the charges against him and what our potential defenses were and . . . what evidence we could put on."

On cross-examination by the State, counsel testified that he was successful in having portions of the petitioner's statement retracted prior to trial. In addition, he recalled that the jury returned verdicts of not guilty on two of the 12 counts and a verdict of guilty on a lesser included offense on one of the 12 counts. Counsel denied telling the petitioner that he faced a maximum sentence of six years. Counsel stated that he did not tell the petitioner to reject any of the plea offers from the State, but he admitted that he did tell the petitioner he thought there was a good chance that his sentences would be ordered to be served concurrently rather than consecutively. Counsel opined that the petitioner was "never really willing" to consider the plea offers because he didn't "want to serve a penitentiary sentence."

Counsel stated that he believed the petitioner's statement to be "pretty solid" and described the case as one "where if the statement gets in, . . . the question was just how many counts this man was going to get convicted of." Counsel testified that his strategy "was to get as many counts thrown out as [he] could and to try to get the [c]ourt to treat the matter as one episode and run whatever counts remained concurrent . . . to expose him to the least possible sentence."

On redirect, counsel stated that he believed the petitioner "got treated a lot more harshly than [he] expected and . . . was justified by the law." Counsel reiterated that his reason for not filing a motion to sever the offenses was "to try to convince [the trial court] that they were one transaction, because [he] wanted the sentences to be run together as if they were one transaction." Counsel also stated that trying the cases had the desired effect of getting not guilty verdicts on two of the charges. Counsel explained that they "were heavy underdogs to win . . . any of these cases" given the petitioner's detailed statement. He stated, "[M]y thinking was, if we're going in as heavy underdogs, if we're going to have a sympathetic jury, is to take maximum advantage of it and get rid of as many counts as possible rather than having to face ten or twelve separate juries."

At the conclusion of the hearing, the post-conviction court denied relief. The court accredited counsel's testimony "with respect to the decisions that he made with respect to his representation of the [p]etitioner." The post-conviction court found "no deficiency in [c]ounsel's performance with the trial preparation, his calling of witnesses, or in his judgment, the decision to not file a Motion to Sever in this case." In its later-filed written order, the court found that "counsel's strategy with respect to not seeking a severance of defendant's cases was successful in having defendant sentenced as a Range I offender albeit he was unsuccessful in avoiding the [c]ourt imposed consecutive sentencing."

In this appeal, the petitioner contends that the post-conviction court erred by denying relief. He alleges that counsel performed deficiently by failing to file a motion to sever and that counsel's deficiency inured to his detriment. The State, of course, disagrees, arguing that counsel's decision to forego a motion to sever the offenses qualifies as tactical decision. We agree with the State.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. *Id.* at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. *Id.* at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

*Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Trial counsel testified that he considered filing a motion to sever the offenses but specifically chose not to do so in hopes of obtaining a more favorable sentence. Although he conceded that his strategy was not successful, counsel insisted that he would make the same decision again if presented with similar circumstances. This court does not examine every allegedly deficient

act or omission in isolation, but rather we view the performance in the context of the case as a whole because our primary concern is the fundamental fairness of the proceeding of which the result is being challenged. *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). Therefore, this court will not second-guess tactical and strategic decisions by defense counsel. *Henley*, 960 S.W.2d at 579. Measured by these standards, it is readily apparent that the petitioner failed to carry his burden for post-conviction relief. No doubt exists that the petitioner is displeased with the services and representation he received or that he is particularly aggrieved by the sentence he received. Nevertheless, the failure of trial counsel's strategy does not, in this instance, entitle the petitioner to post-conviction relief. *Adkins*, 911 S.W.2d at 347.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE